No.——

First Circuit

BRENARD MANUFACTURING CO. v. GREEN, ET AL.

(March 7, 1928.  Opinion and Decree.)
(May  8,  1928.   Rehearing Refused.)

*(Syllabus by the Editor)*

1.  Louisiana   Digest — Fraud — Par.   10; Fraudulent Conveyances—Par. 127.

Where fraud and error are charged, parol testimony is always admissible to avoid and annul a contract.

2.  **Louisiana Digest—Fraud—Par. 1, 2, 10.**

Where parol testimony establishes the fraud by which one of the parties to a contract signed it believing it to be a contract of agency whereas in fact it was a contract of sale, such contract becomes void and non-enforceable.

Appeal from the Parish of St. Tammany. Hon. Prentice B. Carter, Judge.

Action by Brenard Manufacturing Co. against M. Green, et al.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

S. W. Provensal, of Slidell, attorney for plaintiff, appellant.

L. V. Cooley, Jr., of Slidell, attorney for defendant, appellee.

LECHE, J.  Plaintiff's demand is founded upon six notes, aggregating four hundred and twenty-two dollars, made and sub-

scribed by defendant under date October 18, 1921, and payable from two to seven months after date. These obligations were ostensibly issued by defendant in compliance with an agreement of even date therewith, said to be a contract of agency, whereby defendant was given the exclusive right to sell certain reproducing musical instruments called "Golden Throated Claxtonolas" in the town of Slidell, Louisiana. The contract does not vest mandatory authority of any kind upon the defendant, but merely gives him the exclusive right to sell the "Golden Throated Claxtonolas" in Slidell, and in order to exercise this exclusive right, he first had to buy three of these golden throated instruments and give his notes for their purchase price:

The written contract is in the shape of a printed proposal which plaintiff's solicitor presents to a prospective customer and when the solicitor succeeds in inducing the customer to sign it, the proposal is then sent to plaintiff's home office in Iowa City, Iowa, where it is accepted and becomes a completed contract between the parties. According to the wording of the proposal, the agreement is called an agency contract and it is to remain in force for the term of three years. The retail price of the instruments ordered therein, is said to be five hundred and sixty-two dollars but the customer is to give notes in payment thereof, only amounting to four hundred and twenty-two dollars ($422.00). There are other stipulations in the contract such as furnishing on the part of the customer, names of prospective buyers to whom plaintiff might send advertising matter, display of the instruments by the customer in his place of business, the right of plaintiff to send a special salesman in the customer's territory to promote the sale of the claxtonolas and finally a stipulation that the customer cannot countermand his order.

Defendant does not deny that he signed the printed proposal, and also the notes herein sued upon which were originally attached to the proposal, but his defense is grounded on the allegation that his signature thereto was obtained through fraud and misrepresentation.

The evidence shows that the proposal and the notes were signed by defendant on October 18, 1921, and were soon thereafter mailed to plaintiff company by J. F. Walker, who was then acting as its solicitor. Plaintiff in due time acknowledged receipt of the papers and wrote defendant that his proposal was accepted. Defendant then wrote plaintiff on November 4th to inquire whether Walker had informed it of the agreement whereby the term mentioned in the proposal was to be shortened from three years to sixty days, and plaintiff replied that it knew nothing of any such agreement.

Defendant testified in substance that he was in business in the town of Slidell when a man calling himself Walker and claiming to represent the plaintiff company, came to him and wanted him to take the agency for the sale of phonographs for the term of three years. He refused to accept and to bind himself for that length of time, and after some discussion made a counter proposition that he would try for a period of sixty days, and if at the expiration of the sixty days, the phonographs proved to be good sellers, he would figure with him (Walker) on another contract. Walker said he could not do that, but that he would change the contract where it reads three years and make it read sixty days. Walker thereupon told defendant to try at least three different

models of the machine as that would constitute a stock. He then asked defendant how much insurance he carried and defendant told him he carried none for the reason that the rate of premium in the building which he then occupied, was, on account of exposure, entirely too high. Walker then said it was against the rules of the plaintiff company to place stock in an uninsured building. Walker then said that if defendant would sign the notes for sixty days, plaintiff would hold them as security while the machines were in defendant's possession and that defendant would only have to pay the notes in the event the building and machines were destroyed by fire, and that if at the end of sixty days the machines were unsold, defendant could ship them back to plaintiff. Upon these representations by Walker, defendant then signed the proposal and the notes which were all printed on the same sheet of paper.

The testimony of defendant which appears uncontradicted in the note of evidence, together with the designation of "agency contract" in bold type on the printed proposal, warrant the conclusion that defendant signed these documents with the understanding that the golden throated phonographs were to be received by him on consignment, as agent of plaintiff, and that defendant did not then know that he was purchasing the instruments outright and would become unconditionally liable for the price of the same. Defendant's conduct shortly after signing the proposal and the notes, confirms this finding, for as soon as he heard by mail directly from plaintiff he wrote on November 4th, or some two weeks later, inquiring from plaintiff whether Walker had reported the contract agreed to by him. This inquiry was made in good faith as appears from the language of the letter, and while it may be said to be a self-serving declaration, it was made at a time not suspicious and is admissible in corroboration of defendant's testimony.

There is no question in the present case of the admissibility of evidence in contravention of Art. C. C. 2276 to prove a contemporaneous verbal agreement, which conflicts with the terms of another agreement which is in writing and signed by the parties. Here there is but one agreement and there is no claim or contention to the contrary, so that there is no conflict in defendant's position with the decision in the case of the same plaintiff vs. Levy, 161 La. 496, 109 So. 43. The real question is whether that agreement is the one in writing or the one understood by defendant and claimed by defendant to be the true and real agreement.

It is a fact that defendant signed the written agreement, but he charges that his signature was obtained thereto by fraud and misrepresentation. He signed a contract of sale but was fraudulently and falsely led to believe that he was signing a contract of agency, and therein lies the fraud and misrepresentation. Where fraud and error are charged, parol testimony is always admissible to avoid and annul a contract, and where parol testimony establishes such fraud, the contract becomes void and non-enforceable.

The trial Judge rendered a judgment which rejects plaintiff's demand. The evidence seems to support his conclusion, and there is therefore no reason why the judgment should be reversed.

It is therefore ordered that the judgment herein appealed be affirmed.